IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| State Farm Fire and Casualty Company, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Travis Cruise Mitchell and )<br>Christopher Harry, )<br>)<br>Defendants. )<br>) | Case No.: 3:15-1673-TLW |

**OPINION AND ORDER**

The Plaintiff, State Farm Fire and Casualty Company (hereinafter "State Farm" or "Plaintiff"), filed the above-captioned declaratory judgment action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Fed. R. Civ. P. 57 on April 17, 2015. (Doc. #1). In this action, Plaintiff State Farm seeks to obtain a determination and declaration by this Court of the rights and legal obligations of the parties arising out of a Homeowner's Insurance Policy issued by Plaintiff State Farm to the parents of Defendant Travis Cruise Mitchell (hereinafter "Defendant Mitchell"). (Doc. #1). This matter is now before the Court for consideration of cross-motions for summary judgment; Plaintiff State Farm's Motion for Summary Judgment (Doc. #20) and Defendant Christopher Harry's (hereinafter "Defendant Harry") Motion for Summary Judgment (Doc. #22). On February 19, 2016, Defendant Mitchell responded to Defendant Harry's motion for summary judgment indicating that Defendant Mitchell is not filing any memorandum in response to the motion. (Doc. #23). On the same day, Defendant Mitchell filed a Response opposing Plaintiff State Farm's Motion for Summary Judgment (Doc. #24), to which Plaintiff replied on February 29, 2016 (Doc. #27).

After full briefing by the parties on these motions, the Court held a hearing on June 29,

2016, wherein counsel for all three parties presented arguments. (Doc. #36). The Court has carefully considered the arguments, pleadings, motions, memoranda, and exhibits of the parties. The Motions for Summary Judgment are now ripe for disposition.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from the parties' motions, memoranda, and other relevant filings, as well as the June 29, 2016 hearing and the record in this matter. Generally, this declaratory judgment action arises out of an altercation between Defendant Mitchell and Defendant Harry that occurred on October 6, 2012 in Columbia, South Carolina at a University of South Carolina – University of Georgia football game tailgate in an area that was been jointly leased by two fraternities. (Doc. #1, Hearing Transcript at p. 3 lns. 1-4). During that altercation, Defendant Mitchell punched Defendant Harry in the face, allegedly resulting in substantial damages to Harry. Defendant Mitchell asserts he acted in self-defense. Harry subsequently filed a lawsuit in South Carolina state court against Defendant Mitchell seeking to recover damages that Harry asserts he sustained as a result of the altercation. Plaintiff State Farm then filed the above-captioned matter on April 17, 2015, in which it asks this Court to declare the rights and legal relations of the parties based on a homeowner's insurance contract that was issued by Plaintiff State Farm to Defendant Mitchell's parents. (Doc. #1).

It is undisputed that Plaintiff State Farm issued a Homeowner's Insurance Policy to James C. Mitchell and Kathleen D. Mitchell, the parents of Defendant Travis Mitchell, Policy Number 40-EJ-7696-9, and that this Policy was in force and effect on October 6, 2012, the date of the altercation at issue. (See Doc. #1). It is undisputed that Defendant Mitchell qualifies as an "insured" under the Policy. As noted above, a lawsuit was filed by Defendant Harry against Defendant Mitchell in the Court of Common Pleas for Richland County, South Carolina, Civil Action No.: 2014-CP-40-5984, based on the October 6, 2012 incident between Defendant

Mitchell and Defendant Harry, in which Harry alleges to have sustained serious injuries and seeks to recover damages against Defendant Mitchell. Plaintiff State Farm is currently defending Defendant Mitchell in the state court case. (Hearing Transcript at p. 15 lns. 21-25, p. 16 lns. 1-7).

In the instant case, Plaintiff State Farm argues in its motion for summary judgment that the October 6, 2012 incident is not covered by the Homeowner's Insurance Policy based on certain exclusions in Mitchell's Policy, Homeowner's Insurance Policy Number 40-EJ-7696-9 (hereinafter the "Policy"). The Policy at issue in this case contains the following relevant provisions:

> **SECTION II – LIABILITY COVERAGE**
>
> Coverage L – Personal Liability
>
> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies; caused by an **occurrence**, we will:
>
> 1. pay up to our limit of liability for damages for which the **insured** is legally liable; and
>
> 2. provide a defense at our expense by counsel for our choice . . .
>
> **COVERAGE M – MEDICAL PAYMENTS TO OTHERS**
>
> We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury. Medical expenses, means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:
>
> . . .
>
> 2. to a person off the insured location, if the bodily injury:

b. is caused by the activities of an insured.

**SECTION II - EXCLUSIONS**

1. Coverage L and Coverage M do not apply to:

a. **bodily injury** or **property damage**:

(1) which is either expected or intended by the **insured**; or

(2) which is the result of the willful and malicious acts of the **insured**;

In addition to the provisions listed above, the following definitions of terms appear in the policy:

1. "**bodily injury**" means physical injury, sickness or disease to a person. This includes required care, loss of services and a death resulting therefrom.

**Bodily injury** does not include . . .

c.    emotional distress, mental anguish, humiliation, mental distress, mental injury or similar injury unless it arises out of actual injury to some person.

4. "**insured**" means you and, if residents of your household:

a. your relatives . . .

7. "**occurrence**" when used in Section II of this policy, means an accident, including exposure to conditions, which results in :

a. **bodily injury**; or

b. **property damage**;

during the policy period . . . .

The term "accident" is not defined in the Policy.

Plaintiff State Farm initiated the instant declaratory judgment action in this Court, and moved for summary judgment arguing that it has no duty to defend Defendant Mitchell and no duty to indemnify for any potential future award against Defendant Mitchell in connection with

4

the underlying state court lawsuit arising out of the October 6, 2012 altercation between Defendant Mitchell and Defendant Harry.

## **LEGAL STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden requires the movant to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of any genuine issues of fact. Celotex, 477 U.S. at 323; see also Anderson, 477 U.S. at 249.

Though the moving party bears the initial burden, the nonmoving party must then produce specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 334. In satisfying this responsibility, the nonmoving party must offer more than a mere "scintilla of evidence" that a genuine issue of material fact exists, Anderson, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the nonmoving party must produce evidence on which a jury could reasonably find in its favor. See Anderson, 477 U.S. at 252.

In considering the motion for summary judgment, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. See Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Summary judgment is proper "[w]here the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there [being] no genuine issue for trial." Matsushita, 475 U.S. at 587 (1986) (internal quotations omitted).

Summary judgment should only be granted in those cases in which there is no issue of material fact involved and inquiry into the facts is not necessary to clarify application of the law. McKinney v. Bd. of Trustees Mayland Cmty. Coll., 955 F.2d 924 (4th Cir. 1992). A district court should not grant summary judgment "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under the circumstances." Campbell v. Hewitt, Coleman & Assocs., 21 F.3d 52, 55 (4th Cir. 1994).

The Court has subject matter jurisdiction in the instant declaratory judgment action pursuant to 28 U.S.C. § 1332(a), diversity jurisdiction. The parties agree that South Carolina law governs this case; therefore, the Court will apply South Carolina law.

## DISCUSSION

### A.  DUTY TO DEFEND

Under South Carolina law, "[q]uestions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the complaint." City of Hartsville v. S. Carolina Mun. Ins. & Risk Fin. Fund, 382 S.C. 535, 543 (2009) (citing C.D. Walters Const. Co. v. Fireman's Ins. Co. of Newark, New Jersey, 281 S.C. 593, 594 (Ct. App. 1984)). If the "underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend" its insured. Id. at 544 (citing Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co., 274 S.C. 468 (1980)). Moreover, "[a]lthough a determination of an insurer's duty to defend is dependent upon the complaint, an analysis of this duty involves the allegations of the complaint and not the specifically identified causes of action." Id. at 544–45. "An insurer's duty to defend may arise from facts outside of the

6

complaint that are known to the insurer." Id. at 545.

Although reviewing courts must give policy language its plain, ordinary, and popular meaning, the terms of an insurance policy must be construed most liberally in favor of the insured. M & M Corp., 390 S.C. at 259; B.L.G. Enter., Inc. v. First Fin. Ins. Co., 334 S.C. 529, 535 (1999); Rhame v. Nat'l Grange Mut. Ins. Co., 238 S.C. 539, 544 (1961). Where the words of a policy are ambiguous, or where they are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured. M & M Corp. at 259.

It is the insured's burden to establish that a claim falls within the coverage of an insurance contract. Jensen v. Selective Ins. Co. of Se., No. 4:12–cv–02133–RBH, 2013 WL 3148341, at *2 (D.S.C. June 19, 2013) (citing Gamble v. Travelers Ins. Co., 251 S.C. 98, 102 (1968)). Alternatively, the insurer shoulders the burden of establishing the exclusions to coverage and the exclusion is construed "most strongly" against the insurer. Id. (citing Boggs v. Aetna Cas. & Sur. Co., 272 S.C. 460, 252 S.E.2d 565, 568 (1979)). However, an insured party bears the burden of proving an exception to an exclusion. Ross Development Corp. v. PCS Nitrogen Inc., Nos. 12–2059, 12–2454, 2013 WL 2440844, at *3 (4th Cir. June 6, 2013) (citing Helena Chem. Co. v. Allianz Underwriters Ins. Co., 357 S.C. 631, 636, 594 S.E.2d 455, 460 n.5 (2004)).

"Although a determination of an insurer's duty to defend is dependent upon the complaint, an analysis of this duty involves the allegations of the complaint and not the specifically identified causes of action. Moreover, an insurer's duty to defend may arise from facts outside of the complaint that are known to the insurer." City of Hartsville v. S. Carolina Mun. Ins. & Risk Fin. Fund, 382 S.C. 535, 543, 544–45 (2009).

Plaintiff State Farm is currently defending the insured, Defendant Mitchell, in the

underlying state court action filed by Defendant Harry.[1] As Mitchell asserts he was acting in self-defense, and for the reasons explained in more detail below, the Court concludes that the allegations in the underlying state court pleadings and filings, along with the facts known to the insurer, create a possibility of coverage under the Policy in the state court proceeding. See, e.g., Prior v. S.C. Med. Malpractice Liab. Ins. Joint Underwriting Ass'n, 305 S.C. 247, 249 (Ct. App. 1991) (discussing an insurer's duty to defend and stating "[i]n examining the complaint, we must look beyond the labels describing the acts, to the acts themselves which form the basis of the claim against the insurer").

Thus, Plaintiff State Farm has a duty to defend Defendant Mitchell, the insured, in the underlying state court action, Civil Action No.: 2014-CP-40-5984, filed against him by Defendant Harry. Accordingly, Plaintiff State Farm's motion for summary judgment is denied to the extent it seeks judgment on the issue of duty to defend. (Doc. #20). Defendant Harry's motion for summary judgment is granted to the extent it seeks judgment on the issue of State Farm's duty to defend Defendant Mitchell in the state court case. (Doc. #22).

## B. DUTY TO INDEMNIFY

In South Carolina, an "insurer's duty to defend is separate and distinct from its obligation to pay a judgment rendered against an insured." City of Hartsville, 382 S.C. 535 at 544 (citing Sloan Const. Co. v. Cent. Nat. Ins. Co. of Omaha, 269 S.C. 183, 186 (1977)). "Indemnity contemplates merely the payment of money. The agreement to defend contemplates the rendering of services," and can be triggered absent an ultimate finding of liability. City of Hartsville, 382 S.C. at 544 (citing Sloan Const. Co., 269 S.C. at 187–88). As noted above, the Court finds the allegations in the state court pleadings and other information known to Plaintiff State Farm about the October 6, 2012 incident create at least the possibility for coverage under

---

[1] As noted, Harry is the Plaintiff in the underlying state case.

the Policy sufficient to trigger Plaintiff State Farm's duty to defend Defendant Mitchell in the state court proceeding filed against Defendant Mitchell by Defendant Harry.

Plaintiff State Farm argues that it has no duty to Defendant Mitchell in connection with the underlying state court action arising out of the October 6, 2012 altercation because the "intentional act" exclusion applies to exclude or otherwise bar coverage under the Policy. This Court concludes otherwise. On the record before it, the Court does not conclude that Plaintiff State Farm has satisfied the summary judgment standard on its claim for declaratory relief, which seeks a declaration as a matter of law that Plaintiff has no duty to defend Defendant Mitchell and no duty to indemnify under the Policy because there is no possibility of coverage. As discussed below, this Court finds that a genuine issue of material fact exists as to whether Defendant Mitchell's conduct is an "intentional act" within the meaning of the Policy exclusion based on conflicting factual accounts and Defendant Mitchell's assertion that he acted in self-defense during the encounter between Defendant Mitchell and Defendant Harry.

### **Intentional Act Exclusion – South Carolina Law**

In the context of insurance coverage cases, the South Carolina Supreme Court in Singleton enunciated a two-prong analysis courts employ to determine the validity and applicability of an "intentional act" exclusion to a homeowner's insurance policy: first, the act causing the loss must be intentional; and 2) the results of the act must be intentional. Vermont Mut. Ins. Co. v. Singleton By & Through Singleton, 615 S.C. 5, 8 (1994). The facts in Singleton are similar to those in the instant case. In that case, two male high school students got into a fist fight stemming from an argument over a fellow female student. In considering whether an intentional act exclusion applied to bar coverage under a homeowner's insurance policy for the damages endured by one of the students, the South Carolina Supreme Court held that "intentional act" required the showing of two prongs: (1) the first intentional act prong requires

9

"that the insured actually intended to strike the other party"; and (2) the second requires the intentional act must have been done "for an intentional result." Singleton, 446 S.E.2d 417, 420 (1994).

First, all parties agree that the first prong of the "intentional act" analysis under Singleton is satisfied on the facts of this case. Accordingly, the analysis of the applicability of the exclusion herein focuses on whether the second prong has been sufficiently shown—whether the intentional act was done "for an intentional" and expected result. See, e.g., Singleton, 446 S.E.2d at 420. As counsel for Plaintiff State Farm noted in the June 26, 2016 hearing, "factually, there are two separate versions of what occurred" between Defendant Mitchell and Defendant Harry on October 6, 2012. (Transcript at 2, lns. 21-23).

In the instant case, Defendant Harry and Defendant Mitchell argue that Plaintiff State Farm's motion for summary judgment should be denied because there is the possibility of coverage under the Policy. Defendants argue that a jury could reasonably conclude that Defendant Mitchell's actions do not fall within the "intentional act" exclusion in the Policy because the second prong of the intentionality analysis is not satisfied based on Mitchell's assertion that he was acting in self-defense and did not intend the result when he struck Defendant Harry. This Court agrees. The South Carolina Supreme Court has held that, in the context of an intentional act exclusion, "[t]he claim of self-defense raises the question of whether the intentional act was done for an intentional result which is the second prong of the Miller analysis." Id.

The Singleton case offers guidance in analyzing whether the second element of the intentional act exclusion had been satisfied when self-defense has been asserted:

> This claim of self-defense raises the question of whether the intentional act was done for an intentional result which is the second prong of the Miller analysis. The present record supports the finding that insured Webb was reacting to [third party] Singleton when [insured] Webb struck Singleton in the face. The record

> also contains evidence that Singleton participated in some sort of provocation. Whether this provocation reasonably justified Webb's actions is a question which is inherent in any self-defense claim. The Respondents argue that [insured] Webb did not specifically intend to strike Singleton in the face or that Webb intended or expected that Singleton would have suffered the extensive eye injuries. Moreover, because self-defense was arguably present, the referee found that [insured] Webb only intended to protect himself, not inflict a specific injury on Singleton. See Breland v. Schilling, 550 So.2d 609 (La. 1989); Preferred Mut. Ins. Co. v. Thompson, 491 N.E.2d 688 (Ohio 1986); Allstate Ins. Co. v. Novak, 313 N.W.2d 636 (Neb. 1981). Because the evidence in the record supports the referee's finding that Webb did not intend a specific result, we see no reason to disturb the referee's decision.

Vermont Mut. Ins. Co. v. Singleton By & Through Singleton, 446 S.E.2d 417, 420–21 (1994) (footnote omitted).

In this case, for the reasons discussed herein, the Court concludes that there are genuine issues of material fact in dispute which preclude summary judgment on the indemnity issue.

### Self-Defense – South Carolina Law

Under South Carolina law, the "law of self-defense is based upon the necessity to strike in order to save one's self from serious bodily harm, or losing his own life." State v. Burnett, 42 S.E.2d 710, 711 (S.C. 1947). "[W]hile it is well-settled that mere words, however, 'abusive, insulting, vexatious or threatening,' will not in themselves justify the use of a deadly weapon, such words if 'accompanied by an actual offer of physical violence' reasonably warranting fear of serious bodily harm, may be an integral part of a plea of self-defense against liability for an assault and battery." Silas v. Bowen, 277 F. Supp. 314, 318 (D.S.C. 1967) (quoting City of Gaffney v. Putnam, 15 S.E.2d 130, 135 (1941)). "Moreover, in determining whether there was a reasonable cause for the apprehension of serious bodily harm, the difference in age, size, and relative physical strength of the parties to the controversy is a proper matter for consideration." Id. (citing State v. Self, 82 S.E.2d 63, 67 (S.C. 1954)).

"To establish self-defense in South Carolina, four elements must be present: (1) the

defendant must be without fault in bringing on the difficulty; (2) the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) if his defense is based upon his belief of imminent danger, the defendant must show that a reasonably prudent person of ordinary firmness and courage would have entertained the belief that he was actually in imminent danger and that the circumstances were such as would warrant a person of ordinary prudence, firmness, and courage to strike the fatal blow in order to save himself from serious bodily harm or the loss of his life; and (4) the defendant had no other probable means of avoiding the danger." State v. Light, 378 S.C. 641, 649-50, 664 S.E.2d 465, 469 (2008) (citing State v. Slater, 373 S.C. 66, 644 S.E.2d 50 (2007)).

"If there is any evidence in the record from which it could reasonably be inferred that the defendant acted in self-defense, the defendant is entitled to instructions on the defense, and the trial judge's refusal to do so is reversible error." Id. (citing Slater, 644 S.E.2d at 50).

## Legal Analysis

Defendant Mitchell asserts that he initially approached Defendant Harry in an attempt to calm Defendant Harry down. (Depo Mitchell at p. 8 lns. 22-25, lns. 8-25; Doc. #20-7 at 2). Defendant Mitchell stated in his deposition that he did not approach Defendant Harry for the purpose of fighting, and when he did hit Harry, did not intend to inflict any specific injury or harm on Defendant Harry when he struck him in the face. (Doc. #22-2). Defendant Mitchell argues that the intentional act exclusion should not apply in this case because Mitchell acted in self-defense during the altercation, and punched Defendant Harry in the nose to protect himself because he felt threatened by Defendant Harry drawing his fist back in a gesture to strike Mitchell first. (Depo. Mitchell 44:23-45:2; Doc. #22-2 at 11-12). While these facts are disputed

12

by Defendant Harry, the deposition testimony reflects that Defendant Mitchell stated he believed that Defendant Harry would have struck the first blow if Mitchell did not act first. (Doc. #22-2 at 11). Defendant Mitchell further argues that he was under no obligation to avoid walking by Defendant Harry in the parking lot tailgate area, and instead asserts that he did nothing wrong, although, as asserted by Defendants it was perhaps not the best use of judgment, when he approached Defendant Harry with the intention of calming Harry down.[2] (Depo Mitchell at p. 8 lns. 23-25; Doc. #20-7 at 3). According to deposition testimony, only after Defendant Mitchell initially approached Harry did Mitchell sense he was in danger because, according to Mitchell, Harry then moved and had "his [Harry's] arm cocked back in a fashion that he was about to hit me [Mitchell]," and Mitchell "struck him first in an effort to defend [himself]." (Depo Mitchell at p. 8 lns. 22-25, at p. 9 lns. 1-3; Doc. #20-7 at 2-3).

Further, Defendant Mitchell testified during his deposition that after approaching Harry "in an effort to calm him down" he "then realized that he was a good deal bigger than me, and I felt threatened." (Depo Mitchell at p. 8 lns. 22-25– Doc. #20-7 at 2). Defendants argue that the large size disparity between Defendant Harry and Defendant Mitchell is a factor to be considered in determining whether Mitchell acted in self-defense.[3] As noted, under South Carolina law, "in determining whether there was a reasonable cause for the apprehension of serious bodily harm, the difference in age, size, and relative physical strength of the parties to the controversy is a proper matter for consideration." Silas, 277 F. Supp. at 318 (D.S.C. 1967) (citing Self, 82 S.E.2d at 67). Defendant Mitchell asserts that a jury could reasonably infer that Defendant Mitchell did

---

[2] Deposition testimony of Mitchell: "Q: You [Mitchell] didn't approach [Harry] intending to hit him? A: No, sir. Q: You [Mitchell] didn't approach [Harry] intending to cause him any sort of injury? A: No, sir." (Depo. Mitchell at 44 lns. 23-25, at 45 lns. 1-2; Doc. #20-7 at 11-12).

[3] Defendant Mitchell testified in his deposition that Defendant Harry is approximately "a good bit bigger" than Mitchell and is "definitely a few inches taller" and "a bit bulkier." (Depo. Mitchell at p. 33 lns. 19-

feel threatened by Harry's alleged significantly larger stature and size, quick approach, drawing back of his fist, and loud or rowdy demeanor.[4]  In addition, deposition testimony of Defendant Mitchell reflects that Mitchell "didn't intend to hit [Harry] as hard as [Mitchell] could . . . But hit him hard enough to protect [him]self."  (Depo. Mitchell at p. 32 lns. 9-12; Doc. #20-7 at 31).[5]

On the other hand, Plaintiff State Farm argues that even under Defendant Mitchell's version of the facts, there is no possibility of coverage under the Policy because Defendant Mitchell does not satisfy the requirement of self-defense under the law of South Carolina—that the person invoking self-defense "had no other probable means of avoiding the danger," State v. Light, 378 S.C. 641, 649-50, 664 S.E.2d 465, 469 (2008), or that the person was "without fault in bringing on the alleged immediate encounter."  State v. Burnett, 210 S.C. 348, 352, 42 S.E.2d 710, 711 (1947).  In other words, Plaintiff argues that there is no factual dispute regarding self-defense in this case because Defendant Mitchell first approached Defendant Harry and initiated the contact or confrontation, and thus Mitchell is not entitled to assert self-defense.  This Court does not find that position persuasive.

After careful consideration, there is a clear question of fact as to whether Defendant Mitchell acted in self-defense, precluding summary judgment on the indemnification issue.

---

24, at 34 ln. 1; Doc. #20-7 at 9).  Defendant Mitchell testified that he is approximately 5'7" tall and weighed 180-190 pounds at the time of the altercation.  (Depo. Mitchell at 28; Doc. #20-7 at 7).

[4] Deposition testimony of Defendant Mitchell reflects Mitchell's version of the facts: "So the game was at seven. So the incident occurred . . . towards the end of the game or right after the game was over. Either way, it was clear that Carolina was going to win, and I left the tailgating area where I was, by the tent, to use the restroom in the Porta-John. And after leaving the Porta-John, I heard people shouting, turned, and then I heard Mr. Harry say . . . the next fucking Carolina person I see I'm going to hit in the face." (Depo Mitchell at p. 8 lns. 13-23; Doc. #20-7 at 2).

[5] Deposition testimony of Defendant Mitchell provides, in relevant part: "Q: What were you trying to do at the time that you hit him [Harry]?  A: Trying to prevent him [Harry] from punching me first.  Q: Okay. And what did you expect to happen to him when you did punch him?  A: Hopefully put me [Mitchell] in a position where I couldn't get punched."  (Depo. Mitchell at p. 31 lns. 5-11; Doc. #20-7 at 8).  Further, "Q: When you [Mitchell] threw the punch, did it occur to you that you were going to hit him [Harry] hard enough that it might hurt him?  A: I [Mitchell] wasn't thinking about that at the time. I was just thinking

Plaintiff State Farm's argument that Defendant Mitchell initiated the encounter by walking over to Defendant Harry is unavailing. There is testimony in the record that Defendant Mitchell approached Defendant Harry only to "calm him down" and had no intention of starting a fight or specific result. The record suggests that one version of the facts would show that only after Defendant Mitchell said a few words to Defendant Harry, did Defendant Harry draw back his arm in what could be perceived as a motion to strike. (Depo. Mitchell at p. 20 lns. 14-16, lns. 23-24; Doc. #20-7 at 5) ("[Harry] pretty much immediately pulled his arm back. . . . He pulled it back in a swift motion as if he was going to throw a punch.")

Plaintiff cites to Bankers Ins. Co. v. Coker, No. CA2:09-1292-MBS, 2010 WL 2228367 (D.S.C. May 28, 2010), to support its argument that there is no evidence of self-defense in the instant case. Coker was a federal declaratory judgment action brought by an insurance company seeking a declaration that the injuries sustained by a third party, Coker, were not covered by the homeowner's insurance policy issued to its insured, Ward, who punched Coker in the face, based on an "intentional act" exclusion. The Court concludes that Coker is distinguishable from the instant case. In Coker, the court held that there was no factual dispute regarding whether the third party Coker made "any threatening gestures toward [the insured] Ward [or] raised his fists toward Ward." Id. at *1-2 ("[Insured] Ward admitted that Coker was not carrying any weapons, made no verbal threats, made no threatening or obscene gestures toward Ward, and that they had not had physical altercations in the past. In the court's view, no reasonable jury would find that Ward was in actual imminent danger or actually believed he was in imminent danger of losing his life or sustaining serious bodily injury."). Unlike Coker, in the instant case, there is a factual dispute as to whether Defendant Harry could have drawn back his fist and whether Defendant

---

about what I could do to protect myself. Q: Okay. You didn't feel that you needed to strike him more than once? A: No, sir."  (Depo. Mitchell at p. 34 lns. 8-15; Doc. #20-7 at 9).

Mitchell was acting in self-defense.

In short, the allegations in the Complaint as well as the additional information known to Plaintiff State Farm through deposition testimony, this Court finds that a reasonable jury could conclude that Defendant Mitchell acted in self-defense. If Defendant Mitchell acted in self-defense, the intentional act exclusion does not apply because the second prong of intentionality as set forth in Singleton is not satisfied. See Singleton, 446 S.E.2d at 420. Accordingly, a possibility of coverage under the Policy exists sufficient to trigger Plaintiff State Farm's duty to defend under the Policy.

## **CONCLUSION**

The Court concludes that the allegations in the state court action reflect a possibility of coverage under the Policy in connection with the October 6, 2012 altercation between Defendant Mitchell and Defendant Harry. Consequently, Plaintiff State Farm has a duty to defend the underlying state court case that has been filed by Harry against Defendant Mitchell. Accordingly, as to the duty to defend issue, Plaintiff State Farm's motion for summary judgment, (Doc. #20), is denied and Defendant Harry's motion for summary judgment is granted in part, (Doc. #22).

However, the next question, whether Plaintiff State Farm might ultimately have a duty to indemnify the Defendants for any potential monetary award in connection with the 2012 incident, will be stayed pending further proceedings and potential resolution of this matter by the pending state court case, Civil Action No.: 2014-CP-40-5984. During the June 29, 2016 hearing, counsel for Defendant Mitchell and counsel for Defendant Harry orally moved to stay this action pending resolution of the underlying state court case in the event the instant motions for summary judgment are denied. The trial of the case there first may resolve the issues pending

before this Court. In light of the Court's denial of the cross-motions for Summary Judgment on the indemnification and liability issue, the Court **GRANTS** the oral motions to stay.[6]

Accordingly, Plaintiff State Farm's motion for summary judgment (Doc. #20) and Defendant Harry's motion for summary judgment (Doc. #22) are both denied as to the question of indemnification. Defendant Harry's motion for summary judgment (Doc. #22) is granted in part, on the issue of duty to defend. The above-captioned case is stayed pending the resolution of the state court matter between Defendant Harry and Defendant Mitchell.

**IT IS SO ORDERED.**

s/ Terry L. Wooten
TERRY L. WOOTEN
Chief United States District Judge

September 30, 2016
Columbia, South Carolina

---

[6] At the June 29, 2016, Plaintiff's counsel stated and counsel for all parties agreed that due to potential preclusion issues, if this Court denies summary judgment in the instant case, the parties would favor proceeding with the underlying state court action, and that the instant federal action be stayed. See e.g., Pye v. Aycock, 325 S.C. 426 (1997) (holding that res judicata and collateral estoppel barred defendant from relitigating the issue of liability in a state court case where a prior federal declaratory judgment action found in favor of his homeowner's insurer on the issue of coverage in a negligence and intentional tort action filed in connection with an incident in which the insured struck a third party in the face with a metal pipe).

   In this case, counsel for both Defendants stated that they would not oppose intervention by Plaintiff State Farm in the underlying state court action and, in addition, would request a special verdict form with a special interrogatory in which a jury would explicitly decide whether Defendant Mitchell acted in self-defense when he struck Defendant Harry. That determination may be decisive on the issue of coverage under the Policy. Counsel for Plaintiff State Farm represented that he would advise and recommend Plaintiff State Farm to also request the special jury verdict form in the state court action.